**Dated: September 29, 2022**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GREENWAY PARK, LLC, | ) | Case No. 15-13067-SAH |
| | ) | Chapter 7 |
| Debtor. | ) | |

**ORDER ON TRUSTEE'S OBJECTION TO TREATMENT OF CLAIM NO. 9-1, FILED BY NAUTILUS INSURANCE, AS A TIMELY FILED CLAIM; NOTICE OF OPPORTUNITY FOR HEARING; NOTICE OF HEARING (TO BE HELD IF A RESPONSE IS FILED), AND NOTICE DEADLINE TO FILE RESPONSE TO THIS OBJECTION [DOC. 270] AND NAUTILUS' APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE COMBINED WITH NOTICE THEREOF, NOTICE OF HEARING, AND BRIEF IN SUPPORT [DOC. 280]**

The following are before the Court for consideration:

1. Trustee's Objection to Treatment of Claim No. 9-1, Filed by Nautilus Insurance, as a Timely Filed Claim; Notice of Opportunity for Hearing; Notice of Hearing (To Be Held If a Response Is Filed), and Notice Deadline to File Response to this Objection [Doc. 270] (the "Claim Objection"), filed on June 28, 2022, by chapter 7 trustee, Kevin M. Coffey ("Trustee");

2. Response to Trustee's Objection to Claim Number 9-1 and Incorporated Memorandum in Support [Doc. 279] (the "Response to Claim Objection"), filed on July 19, 2022, by Nautilus Insurance Co. ("Nautilus");

3.  Application for Allowance and Payment of Administrative Expense Combined with Notice Thereof, Notice of Hearing, and Brief in Support [Doc. 280] (the "Administrative Expense Application"), filed on July 19, 2022, by Nautilus;

4.  Trustee's Reply to Nautilus's Response [Doc. 296] (the "Reply"), filed on August 9, 2022, by Trustee; and

5.  Trustee's Objection to Nautilus's Application for Allowance and Payment of Administrative Expense [Doc. 297] (the "Response to Administrative Expense Application"), filed on August 9, 2022, by Trustee.

## BACKGROUND

Prior to filing the present bankruptcy case, Greenway Park, LLC ("Debtor") made a claim on its insurance carrier, Nautilus, for coverage related to a lawsuit brought by certain property developers against Debtor. Nautilus denied the insurance claim. Post-petition, Trustee brought suit against Nautilus for breach of contract and bad faith based on its denial of Debtor's claim. Nautilus prevailed and was awarded attorney fees and costs based on Oklahoma fee-shifting statutes. Nautilus now seeks payment of its fee award as either an allowable postpetition claim or an administrative expense under 11 U.S.C. § 503(b)(1)(A).[1]

## JURISDICTION

The Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C. §§ 157(b)(2)(A) and (B).

---

[1] Unless otherwise indicated, hereafter all references to sections are to the Bankruptcy Code, Title 11 of the United States Code.

2

**STATEMENT OF FACTS**

1. On November 19, 2013, Debtor filed a claim with Nautilus seeking insurance coverage for defense of a lawsuit with certain property developers. Trustee Exhibit 1.

2. Nautilus denied the claim by letter on January 23, 2014. Trustee Exhibit 3.

3. Debtor filed a chapter 11 voluntary petition on August 12, 2015. On January 20, 2016, the Court entered its Order Granting Motion to Convert Case to Chapter 7, converting the case to a chapter 7 liquidation. Doc. 130.[2]

4. On February 18, 2016, Debtor filed amended schedules to include potential claims against Nautilus for breach of contract and bad faith. Debtor also filed an amended creditor matrix which included Nautilus. Trustee Exhibit 4, p. 170.

5. Nautilus' claim file reflects a review of Debtor's amended schedules and matrix on March 1, 2016, by "Legal." Trustee Exhibit 5, p. 8.

6. On March 9, 2016, a Notice to File Proof of Claim was served on all creditors, including Nautilus, setting a claims bar date of June 7, 2016. Doc. 147.

7. On June 30, 2016, Trustee filed a lawsuit against Nautilus in the District Court of Cleveland County, Oklahoma (the "State Court"), Case No. CJ-16-754, for breach of contract and bad faith (the "State Court Action").[3] Nautilus Exhibit 2.

---

[2] It is well established that a court may take judicial notice of its own records as well as records of other courts, particularly in closely related cases. Hutchinson v. Hahn, 402 F. App'x 391, 394-95 (10th Cir. 2010) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)); Cornforth v. Fidelity Inv., 2017 WL 650132 (W.D. Okla. 2017).

[3] Trustee additionally brought claims against an insurance agency, Alexander & Strunk, LLC, for negligence and negligent misrepresentation; however, those claims are not relevant here.

8. The State Court granted summary judgment against Debtor and in favor of Nautilus on both claims. Nautilus Exhibit 1.

9. On October 8, 2021, the State Court awarded Nautilus, as prevailing party, its attorney fees and costs in the amount of $369,745.39 (the "Fee Award") pursuant to Okla. Stat. tit. 12 §§ 929, 1101.1(B) and tit. 36, § 3629(B) (the "Oklahoma Fee-Shifting Statutes"). The Court memorialized the Fee Award in its Journal Entry of Judgment Awarding Attorneys Costs and Fees to Nautilus Insurance Company (the "Fee Award Order") on November 16, 2021. Nautilus Exhibits 1, 3, 4.

10. On November 17, 2021, Nautilus filed Proof of Claim 9-1, asserting its proof of claim was filed timely under Federal Rule of Bankruptcy Procedure 3002(c)(3).[4] Claim 9-1.

11. Trustee filed the Claim Objection on July 19, 2022. Nautilus responded and filed its Administrative Expense Application, seeking payment of the Fee Award as an administrative expense pursuant to Section 503(b)(1)(A). A hearing on the Claim Objection and Administrative Expense Application was held on August 17, 2022.[5]

## APPLICABLE STATUTORY PROVISIONS

11 U.S.C. § 101 provides in pertinent part:

> (5) The term "claim" means–
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

---

[4] At the August 17, 2022 hearing, Nautilus withdrew its argument based on Rule 3002(c)(3) as it was not applicable to the Fee Award.

[5] The hearing on August 17, 2022, was held by videoconference. Unfortunately, due to the Court's oversight, the hearing was not recorded and so no transcript is available. Given the Court's error, the Court permitted the parties to request a rehearing. The parties declined a rehearing.

>> matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured;
>>
>> . . .
>
>> (10) The term "creditor" means–
>>> (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
>>>
>>> (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or
>>>
>>> (C) entity that has a community claim.

11 U.S.C. § 501 provides in pertinent part:

> (a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.
>
> (b) If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.
>
> (c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

11 U.S.C. § 503(b) provides in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses . . . including–
>
>> (1)(A) the actual, necessary costs and expenses of preserving the estate.

### **LEGAL CONCLUSIONS**

Trustee objects to Nautilus' Proof of Claim 9-1 as untimely. Nautilus argues its claim for attorney fees is a timely-filed, post-petition claim entitled to distribution from Debtor's chapter 7 bankruptcy estate. Nautilus further argues its attorney fees are entitled to administrative priority

5

pursuant to Section 503(b)(1)(A). Nautilus is mistaken on both counts. Though Nautilus is correct in its assertion the Fee Award is a post-petition claim, a post-petition claim is not entitled to distribution from the bankruptcy estate unless it is an allowed administrative expense or another exception applies. Nautilus, however, is not entitled administrative priority as the defense of the State Court Action provided no benefit to the estate, and no exception to the benefit requirement applies which would allow payment of the Fee Award as an administrative expense.

I.   **CLAIM OBJECTION**.

    A.   **Nautilus' Fee Award is a Post-Petition Claim.**

The Bankruptcy Code broadly defines the term "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). To determine whether a claim arises pre-petition or post-petition, the Tenth Circuit has adopted the conduct theory "which determines the date of a claim by the date of the conduct giving rise to the claim" as opposed to the accrual theory "which determines the date of a claim pursuant to the state law under which liability for the claim arose." Watson v. Parker (In re Parker), 313 F.3d 1267, 1269 (10th Cir. 2002) ("We now adopt the conduct theory as the one more in tune with the plain language and policy underlying the Bankruptcy Code.").[6] Thus,

---

    [6]The Tenth Circuit also acknowledged a third, hybrid test referred to as the narrow conduct theory where "a claim arises at the time of conduct only if the claimant had a specific relationship with the debtor at the time the conduct occurred," however, because the result would be the same under either test, the Tenth Circuit declined to "decide which version of the conduct theory to adopt." Parker, 313 F.3d at 1269 n.1. "Since the Tenth Circuit Bankruptcy Appellate Panel and the Ten[th] Circuit Court of Appeals in In re Parker outright adopted the conduct
(continued...)

6

in the Tenth Circuit, the Bankruptcy Code and not state law determines when a claim arises. Dold v. Rainbows United, Inc. (In re Rainbows United, Inc.), 547 B.R. 430, 436 (Bankr. D. Kan. 2016) (citing White v. Chance Indus., Inc. (In re Chance Indus., Inc.), 367 B.R. 689, 699 (Bankr. D. Kan. 2006). In choosing the conduct theory, the Tenth Circuit noted "Congress intended that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in bankruptcy. The Code contemplates the broadest possible relief in the bankruptcy court." Parker, 313 F.3d at 1270 (citing Grady v. A.H. Robins Co., Inc., 839 F.2d 198, 202 (4th Cir. 1988)).

Under the conduct theory "the timing of the debtor's conduct that gives rise to the cause of action determines whether the claim is pre or post-petition." Watson v. Parker (In re Parker), 264 B.R. 685, 696 (10th Cir. BAP 2001), aff'd, 313 F.3d 1267 (10th Cir. 2002). Therefore, a pre-petition claim "will exist if some pre-petition conduct has occurred that will give rise to liability." Parker, 264 B.R. at 697. Courts have relied on a variety of conduct for determining when a claim arose, including when a contract was executed, when a breach of contract occurred, when wrongful conduct giving rise to liability took place, and when litigation commenced. See, e.g., Parker, 313 F.3d 1269 (holding former client's malpractice claim arose pre-petition when malpractice occurred); S-Tek 1, LLC v. Sure-Tek, Inc. (In re S-Tek 1, LLC), 20-12241-J11, 2022 WL 2133980 (Bankr. D. N.M. June 13, 2022) (holding unliquidated damages arising from

---

$^6$(...continued)
approach and there is no authority narrowing the scope of that approach in the Tenth Circuit, the Court sees no basis to apply a hybrid conduct test here." In re Morgan, BR 10-26708, 2020 WL 1923617, at *9 (Bankr. D. Utah Apr. 16, 2020), aff'd, 2:20-CV-00291-DBB, 2021 WL 4949150 (D. Utah Oct. 25, 2021), appeal dismissed, 21-4137, 2022 WL 1469473 (10th Cir. Jan. 5, 2022) (citing Parker, 313 F.3d 1269).

7

pre-petition breach of lease claim was pre-petition claim); In re S-Tek 1, LLC, 20-12241-J11, 2021 WL 4876930 (Bankr. D. N.M. Oct. 19, 2021) (holding indemnification claims based on pre-petition guarantees are pre-petition even though claims accrued post-petition under state law); Morgan, 2020 WL 1923617, at *9 (holding indemnification and unjust enrichment claims for securities violations fines arose pre-petition where conduct for which fines were assessed occurred pre-petition although fines were assessed post-petition); Cybertron Int., Inc. v. Capps (In re Capps), 16-10141, 2018 WL 3635708 (Bankr. D. Kan. July 26, 2018) (holding claim arose postpetition where breaches of covenant occurred post-petition); Rainbows United, 547 B.R. 430 (holding an indemnification claim for unpaid payroll taxes arose pre-confirmation where creditor was aware of unpaid payroll taxes pre-confirmation even though IRS assessed the tax penalties against creditor post-confirmation); Pratt v. Maale (In re Maale), ADV 13-02511, 2014 WL 896994 (Bankr. D. Utah Mar. 6, 2014) (holding claim is post-petition where claimants entered into contract with debtor post-petition); In re Marshall, 302 B.R. 711, 716 (Bankr. D. Kan. 2003) (holding a claim under an indemnification agreement arose pre-petition where nonpayment for which indemnification was owed occurred pre-petition); In re MOY, No. BR 12-B-81963, 2016 WL 7745143, at *4 (Bankr. N.D. Ill. Jan. 13, 2016) (holding claim for post-petition attorney fees arose pre-petition where fees were awarded in litigation that commenced pre-petition based on pre-petition contract provision); Aldrich v. Papi (In re Papi), 427 B.R. 457, 466 (Bankr. N.D. Ill. 2010) (holding contingent claim for sanctions arose pre-petition when purportedly sanctionable conduct occurred); In re Bowden, 14-10545, 2015 WL 4710376, at *5 (Bankr. M.D. N.C. Aug. 6, 2015) (holding post-petition fees granted pursuant to statute arose pre-petition where the motion for statutory attorney fees "could have been (and was) commenced pre-petition, . . . the claim

8

under the statute fully accrued pre-petition, and [was] subject to a statutory cap of $10,000.00" that had already been met pre-petition).

Determining what conduct is relevant under the conduct theory in the present case is not a straightforward task. The parties did not contract for payment of attorney fees; the Fee Award was based solely upon the Oklahoma Fee-Shifting Statutes awarding fees to prevailing parties in litigation. It follows the relevant conduct cannot be the contract execution because the contract provided no basis for the Fee Award. The relevant conduct similarly cannot be the denial of insurance coverage, as no litigation had commenced for which attorney fees could be granted under the Oklahoma Fee-Shifting Statutes. Though Nautilus denied Debtor's insurance coverage claim on January 23, 2014, it was not involved in any pre-petition litigation with Debtor. The relevant conduct here must be Trustee's commencement of litigation against Nautilus, as before that point, the Oklahoma Fee-Shifting Statutes could not have supported a contingent claim.

Typically, where a breach of contract occurred pre-petition, the claim "is a pre[-]petition claim even if the amount of the claim may include post-petition attorney's fees." S-Tek 1, LLC, 2022 WL 2133980, at *59 (first citing MOY, 2016 WL 7745143, at *4; and then citing In re Pioneer Carriers, LLC, 581 B.R. 809, 819 (Bankr. S.D. Tex. 2018)). However, in such cases, the litigation commenced pre-petition. See, e.g., MOY, 2016 WL 7745143; Bowden, 2015 WL 4710376. The Court finds Papi most analogous to the present case. Papi held a contingent claim for sanctions arose "the moment the Debtor purportedly filed motions wrongfully in state court" contingent on the court finding in claimant's favor. Papi, 427 B.R. at 466. Similarly, Nautilus had a contingent claim for attorney fees the moment Trustee commenced litigation post-petition contingent on Nautilus prevailing in the State Court Action. Prior to that date, there was simply

9

no basis for an award of attorney fees and so no basis for a contingent claim. Because Debtor filed its bankruptcy case on August 12, 2015, and the case was converted to a chapter 7 on January 20, 2016,[7] *and* Trustee commenced the State Court Action on June 30, 2016, the Fee Award arose post-petition.

      **B.**    **Nautilus is not a "creditor" Entitled to Distribution from the Bankruptcy Estate.**

The term "creditor" is defined by the Bankruptcy Code as an "entity that has a claim against the debtor that arose *at the time of or before* the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (emphasis added).[8] A creditor in a bankruptcy proceeding, therefore, must hold the claim pre-petition; an entity holding only a post-petition claim (even an administrative one) does not fall within the Bankruptcy Code's definition of creditor. See Albuquerque Sand & Gravel, Inc., CIV.A. 05-2178-CM, 2006 WL 950189, at *4 (D. Kan. Apr. 7, 2006). Generally, only creditors are entitled to file proofs of claims[9] and "proofs of

---

[7]"A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition." 11 U.S.C. § 348(d).

[8]The definition of "creditor" also includes an "entity that has a claim against the estate of a kind specified in [S]ection 348(d), 502(f), 502(g), 502(h) or 502(i) of this title" and an "entity that has a community claim." 11 U.S.C. §§ 101(10)(B), (C). None of these circumstances apply to Nautilus: (i) Section 348(d) addresses claims arising after the order for relief but prior to conversion; (ii) section 502(f) applies only to involuntary cases; (iii) Section 502(g) addresses claims arising from rejection of an executory contract or unexpired lease; (iv) Section 502(h) applies to claims arising from recovery of property under Sections 522, 550, and 553; and (v) Section 502(i) addresses priority tax claims.

[9]An indenture trustee may also file a proof of claim. 11 U.S.C. § 501(a). If a creditor fails to file a proof of claim then "an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof claim." 11 U.S.C. 501(b). Lastly, the debtor of

(continued...)

claims are 'determined' and 'allowed' in an amount . . . as of the date of the filing of the petition" unless an exception applies. In re Ockerlund Const. Co., 308 B.R. 325, 331 (Bankr. N.D. Ill. 2004) (citing 11 U.S.C. § 502(b)); In re Woods, 316 B.R. 522, 524 (Bankr. N.D. Ill. 2004). "Thus, a holder of a post-petition 'claim' that is not entitled to administrative-expense priority cannot be a creditor, cannot file a proof of claim, and, even if he could file one, cannot by definition have an 'allowed' claim as of the petition date." Ockerlund Const., 308 B.R. at 331; see also Woods, 316 B.R. at 524 n.1 ("Since filing a proof of claim is generally required for the claim to be allowed under § 502, only prepetition claims can generally be allowed.").

As discussed above, Nautilus holds only a post-petition claim and, therefore "cannot be a creditor, cannot file a proof of claim, and, even if [Nautilus] could file one, cannot by definition have an 'allowed' claim as of the petition date." Ockerlund Const., 308 B.R. at 331. Nautilus' Proof of Claim 9-1 is, therefore, disallowed as a post-petition claim.[10] Thus, Nautilus may

---

[9](...continued)
trustee may file a proof of claim if a creditor fails to timely file one. 11 U.S.C. § 501(c). None of these exceptions apply here.

[10]Nautilus asks the Court to recognize an attachment to the Response of RT Properties, LLC, and Rodney D. Thornton to Trustee's Emergency Motion for Order Prohibiting Intervenors from Intervening in Trustee's Lawsuit in Cleveland County or Otherwise Violating the Automatic Stay as to Trustee's Lawsuit [Doc. 204] (the "RT Properties Response") as an informal proof of claim. Response, 7. There are three problems with this argument. First, Nautilus did not file the RT Properties Response, RT Properties, LLC did. An attachment to a document filed by another party in the bankruptcy proceeding cannot act as an informal proof of claim for Nautilus. In re Integrity Directional Servs., LLC, 613 B.R. 361, 367, 371 (Bankr. W.D. Okla. 2020). Second, the RT Properties Response was filed October 30, 2018, over two years *after* the claims bar date of June 7, 2016. So even if the attachment to the RT Properties Response was deemed an informal proof of claim it would not help Nautilus whatsoever in making a timely proof of claim. Finally, because Nautilus is not a creditor and so not entitled to file a proof of claim, whether Nautilus timely filed a proof of claim is not relevant. Ockerlund Const., 308 B.R. at 331.

11

receive payment on its Fee Award only if it is entitled to an administrative expense.

II.     ADMINISTRATIVE EXPENSE APPLICATION.

    A.     Nautilus' Fee Award is not an Allowable Administrative Expense.

"Administrative expenses are specially favored post-petition claims, given priority in asset distribution over most other claims against the bankruptcy estate." Gen. Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.), 1 F.3d 1130, 1132 (10th Cir. 1993) (citing Sections 503, 507(a)(1)). The Tenth Circuit narrowly construes statutory priority for administrative expenses "because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors." Isaac v. Temex Energy, Inc. (In re Amarex), 853 F.2d 1526, 1530 (10th Cir. 1988) (citing Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 100 (2d Cir. 1986)). To be deemed an administrative expense under Section 503(b)(1)(A), the expense must: "(1) [arise] from a transaction with the estate; and (2) directly and substantially benefit[] the estate." In re Lister-Petter Ams., Inc., No. 15-10502, 2020 WL 598433 at *3 (Bankr. D. Kan. Feb. 6, 2020) (citing 4 Collier, ¶ 503.06[3]); Mid Region Petroleum, 1 F.3d at 1133 (citing Amarex, 853 F.2d at 1530). Unless an administrative expense claimant's interest is "beneficial to rather than competitive with the interests of the creditors in the bankruptcy proceeding, it is not entitled to the priority of an administrative expense." Colorado Mountain Express, Inc. v. Aspen Limousine Serv., Inc. (In re Aspen Limousine Serv., Inc.), 193 B.R. 325, 337 (D. Colo. 1996) (citing Amarex, 853 F.2d at 1530). Further, "[t]he party claiming that an expense has administrative priority has the burden of proving it." In re Franklin, 284 B.R. 739, 742 (Bankr. D. N.M. 2002) (citing Amarex, 853 F.2d at 1530).

12

Here, the Fee Award is based on Nautilus' defense of breach of contract and bad faith claims brought by Trustee on behalf of the bankruptcy estate and so arises from a transaction with the estate. However, far from directly benefitting the estate, the Fee Award represents Nautilus' defensive efforts *against* the bankruptcy estate. In no way could Nautilus' defense of these claims be considered "beneficial to rather than competitive with the interests" of Debtor's other creditors. Aspen Limousine Serv., 193 B.R. at 337 (citing Amarex, 853 F.2d at 1530). Nautilus provided no benefit to the estate, much less a direct and substantial benefit; therefore Nautilus is not entitled to an administrative expense unless an exception to the benefit requirement applies.

Nautilus, unsurprisingly, does not argue it provided an actual benefit to the bankruptcy estate. Instead, Nautilus relies on an exception to the administrative priority rules created by the Supreme Court in Reading Co. v. Brown, 391 U.S. 471 (1968). As discussed below, Nautilus' reliance is misplaced.

  B.  **The Reading Exception does not Apply to Nautilus' Fee Award.**

The Reading exception allows post-petition claims arising from the "wrongful conduct of a receiver in the course of operating the debtor's estate" to be granted administrative priority. Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.), 258 F.3d 385, 388 (5th Cir. 2001) (citing Reading, 391 U.S. at 478 (finding that the "petitioner did not merely suffer injury at the hands of an insolvent business: it had an insolvent business thrust upon it by operation of law")). In Reading, a receiver was appointed to conduct the leasing business of a Chapter XI debtor under the 1898 Bankruptcy Act. 391 U.S. at 474. The debtor's building was destroyed by a fire that spread to, and damaged, the adjacent properties because of the receiver's

13

negligence.  Reading, 391 U.S. at 473-74.  The Reading Court, being particularly concerned with the statutory objective of "fairness to all persons having claims against an insolvent," held that "damages resulting from the negligence of a receiver acting within the scope of his authority as receiver give rise to 'actual and necessary costs' of a Chapter XI arrangement."  Reading, 391 U.S. at 477, 485.

Some courts have extended Reading's applicability to post-petition claims for damages regardless of whether the expenses were "actual and necessary" to the administration or reorganization of the estate.  Aspen Limosine Serv., 193 B.R. at 337 (first citing In re MacDonald, 128 B.R. 161, 164 (Bankr. W.D. Tex. 1991); and then citing Brutoco Eng'g & Constr. Co. v. Dennis Ponte, Inc. (In re Dennis Ponte, Inc.), 61 B.R. 296, 299 (9th Cir. BAP 1986)); see also In re Met-L-Wood Corp., 115 B.R. 133 (N.D. Ill. 1990) (allowing post-petition attorney fees defending frivolous litigation as an administrative expense under Reading's fundamental fairness doctrine).  The Tenth Circuit, however, has not.

Given the Tenth Circuit's narrow construction of statutory priority, it is unsurprising the Tenth Circuit has declined to expand Reading's so called "fundamental fairness" doctrine.  See Aspen Limousine Serv., 193 B.R. at 337 (citing Amarex, 853 F.2d at 1530).  In fact, the vast majority of cases in this Circuit considering Reading found it did not apply.  See, e.g., Pension Benefit Guaranty Corp. v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.), 150 F.3d 1293 (10th Cir. 1998) (declining to extend Reading to pre-petition minimum funding contribution claim); Amplex Corp. v. Gonzales (In re Furr's Supermarkets, Inc.), 2007 WL 559766 (10th Cir. BAP Feb. 22, 2007) (holding the Reading exception does not apply to breach of contract claim); Aspen Limousine Serv., 193 B.R. 325 (declining to grant

14

administrative priority under Reading for antitrust damages as it was speculative as to amount and unrelated to preservation of the estate); Lister-Petter, 2020 WL 598433 at *4 (holding the Reading exception does not apply to damages arising from the trustee's liquidations efforts); Redmond v. NCMIC Fin. Corp. (In re Brooke Corp.), 485 B.R. 650 (Bankr. D. Kan. 2013) (declining to extend Reading to tort claims arising from pre-petition conduct of a superseded custodian); Franklin, 284 B.R. 739 (declining to apply Reading to the debtor's post-petition personal medical expenses). But see, Landrum v. Otero Cnty. Hosp. Assn., Inc. (In re Otero Cnty. Hosp. Assn., Inc.), 560 B.R. 551 (Bankr. D.N.M. 2016) (noting that a medical malpractice claim against a debtor hospital that arose post-petition would be an administrative claim under Reading); In re Hildebrand, 205 B.R. 278 (Bankr. D. Colo. 1997) (holding the return of earnest money was entitled to administrative priority based on Reading's fundamental fairness reasoning, however, relied heavily on a disfavored case from the Ninth Circuit[11]).

The most recent bankruptcy case in the Tenth Circuit to discuss the exception emphasized "[w]hile Reading grants relief to victims of postpetition torts committed by the debtor in possession or trustee, the claims ***must arise out of postpetition business operations***. The doctrine doesn't apply in chapter 7 cases ***if the harm is caused by the trustee's liquidation efforts***." Lister-Petter, 2020 WL 598433 at *4 (citing 4 Collier, ¶ 503.06[3][c][ii]) (emphasis

---

[11]The court in Hildebrand relied heavily upon Irmas Family Trust v. Madden (In re Madden),185 B.R. 815 (9th Cir. BAP 1995), a Ninth Circuit Bankruptcy Appellate Panel decision embracing a broad interpretation of Reading. 205 B.R. at 286-87. The Ninth Circuit has since disavowed Madden's expansion of the Reading exception. Abercrombie v. Hayden Corp. (In re Abercrombie), 139 F.3d 755, 759 (9th Cir. 1998); see also In re Darby Lumber, Inc., 02-30483-7, 2007 WL 2253568, at *3 n.1 (Bankr. D. Mont. Aug. 2, 2007) (first citing Abercrombie, 139 F.3d at 759; and then citing Madden, 185 B.R. at 818) (noting Abercrombie implicitly overrules Madden). The Court is, therefore, not persuaded by the reasoning in Hildebrand and aligns itself instead with the vast majority of cases in our Circuit declining to expand the scope of Reading.

added). The Fifth Circuit also declined to extend Reading: "Because we do not find that *Reading* was intended to grant priority to post-petition attorney fee awards resulting from a trustee's good faith attempt to liquidate the debtor's estate by bringing suit on a pre-petition contract, we decline Appellant's invitation to be the first to extend the exception." Jack/Wade Drilling, 258 F.3d at 389. Therefore, for the Fee Award to be granted administrative priority under Reading, it must be a post-petition claim arising from the operation of Debtor's business[12] and must involve tortious or otherwise wrongful conduct. Lister-Petter, 2020 WL 598433 at *4; Franklin, 284 B.R. at 742; Aspen Limousine Serv., 193 B.R. at 337. The Fee Award satisfies neither requirement.

First, Nautilus' Fee Award does not arise from the operation of Debtor's business because there is no business operation. Unlike Reading which dealt with a reorganization, Debtor is undergoing chapter 7 liquidation, and the Fee Award arises from Trustee's liquidation efforts, not any business operation. Reading simply does not apply.

Second, though Nautilus makes vague claims in its Administrative Expense Application that Trustee's pursuit of litigation was "meritless" and "frivolous," no evidence before the Court supports that conclusion. Administrative Expense Application, 5. Further, the Fee Award Order makes no mention of frivolous or meritless litigation, and the Oklahoma Fee-Shifting Statutes

---

[12]Though not applicable here, in a case declining to apply Reading, the Tenth Circuit Court of Appeals indicated it may also include environmental statutory penalties under the Reading exception: "[cases expanding Reading's analysis] demonstrate a judicial willingness to extend administrative claim status to tortious damages incurred post-petition and statutory penalties in the environmental law arena incurred post-petition." CF & I Fabricators, 150 F.3d at 1298.

16

under which attorney fees were awarded do not relate to sanctions or misconduct.[13]  The harm to Nautilus did not arise from any wrongdoing, but rather arose directly from Trustee's liquidation efforts.  Such harm is not recoverable as an administrative expense under Reading.  Lister-Petter, 2020 WL 598433 at *4.

Finally, unlike the fire damages in Reading, it is not fundamentally unfair for Nautilus to bear its own costs of litigation, as under the "American Rule," it is standard practice for individuals to bear the cost of litigation.  Jack/Wade Drilling, 258 F.3d at 390 n.4 ("We cannot equate the injustice that would have resulted to the fire damage victim in Reading had it been denied full recovery of its damages with that resulting to TMC in being denied full recovery of its contractual attorney fees and costs.").

To apply Reading in this case would require this Court to broaden the exception far beyond what the Tenth Circuit (and majority of other circuits) allow.  The Tenth Circuit takes a narrow view of administrative expenses to ensure a debtor's limited resources are equally distributed among its creditors.  Amarex, 853 F.2d at 1530 (citing Trustees of Amalgamated Ins. Fund, 789 F.2d at 100).  Moreover, as admitted by Nautilus' counsel during the August 17, 2022, hearing, broadening the Reading exception to include the Fee Award would expose any chapter 7 trustee undertaking liquidation activities, even routine actions, to potential administrative expenses in the form of attorney fees to prevailing party defendants, thus reducing the estate

---

[13]The Fee Award was granted pursuant to Okla. Stat. tit. 12 §§ 929 (providing attorney fees for successful plaintiffs in action for recovery of money) and 1101.1(B) (providing attorney fees where an offer of judgment is not accepted and defendant prevails) and Okla. Stat. tit. 36, 3629(B) (providing attorney fees where insurer offers settlement that is rejected and judgment does not exceed offer of settlement).  None of the statutes relied upon in making the Fee Award provide for sanctions for tortious conduct or frivolous litigation.

before any other creditors receive distribution. Aside from being outside the Court's authority given the clear directive from the Tenth Circuit, such a broad grant of administrative priority to attorney fees arising from a trustee's liquidation efforts would have a chilling effect on trustees who may fear pursuing legitimate claims at the risk of the estate being consumed by prevailing party attorney fees.

For these reasons, the Court cannot, and will not, expand <u>Reading</u> to include attorney fee awards like the Fee Award held by Nautilus.

## **CONCLUSION**

For the reasons set forth above, Nautilus' claim for the Fee Award is disallowed as a postpetition claim, and Nautilus' request for administrative expenses is DENIED.

IT IS SO ORDERED.

# # #